Affirmed by published opinion. Judge KEENAN wrote the opinion, in which Judge WILKINSON and Judge DIAZ joined. Judge WILKINSON wrote a separate concurring opinion.
BARBARA MILANO KEENAN, Circuit Judge:
In this appeal, we consider whether the district court abused its discretion in ordering that the Equal Employment Opportunity Commission (EEOC) pay attorneys’ fees to a prevailing defendant employer after the court awarded summary judgment to the employer in an action brought by the EEOC. In awarding attorneys’ fees, the district court concluded that the EEOC acted unreasonably in filing the employment discrimination complaint, because events that occurred during the EEOC’s administrative investigation precluded the EEOC from obtaining either injunctive or monetary judicial relief. Upon our review, we affirm the district court’s judgment.
I.
In January 2003, Michael Quintois filed a charge of discrimination with the EEOC against his former employer, Propak Logistics, Inc. (Propak), a provider of com *148 mercial warehousing, transportation, packaging, and shipping services. Quintois was a supervisor at Propak’s Shelby, North Carolina facility, and alleged that Propak terminated his employment based on his “American” national origin after he complained that the company hired only Hispanic workers for certain supervisory positions. The EEOC notified Propak of the discrimination charge arising under Title VII of the Civil Rights Act of 1964 (Title VII).
Based on Quintois’ discrimination charge, the EEOC initiated an investigation of Propak that lasted nearly six years. This investigation included extensive periods of delay and inactivity.
Although Propak responded to the charge in May 2003, the EEOC did not interview Quintois concerning Propak’s response until May 2004. The EEOC also delayed until April 2004 its interview of Kathy Ponder, a Propak manager responsible for hiring decisions at the Shelby, North Carolina facility.
In September 2004, the EEOC designated the matter as a “class case.” However, as the district court later found, Propak did not receive notice of this procedural decision until about four years later in September 2008.[1]
Although the EEOC scheduled and conducted two witness interviews between October 2004 and March 2005, little other investigative activity occurred during this period. The record also shows that the EEOC did not contact Propak for about two years, between June 6, 2005 and June 7, 2007. In June 2007, the EEOC contacted Propak to speak with Ponder, but was unable to interview her because she had left her job and her whereabouts were unknown.
During the course of the EEOC’s inquiry, Quintois requested a “right to sue” authorization.[2] After the EEOC granted Quintois’ request, Quintois filed a lawsuit against Propak in March 2008, which was dismissed about four months later upon agreement of the parties.
In September 2008, the EEOC concluded its investigation of Propak and issued a “determination letter.” The EEOC stated that it had found reason to conclude that Propak violated Title VTI by failing to hire a class of non-Hispanic job applicants because of their race or national origin. In the letter, the EEOC also invited Pro-pak to participate in informal conciliation to resolve the matter pursuant to the EEOC’s statutory mandate to engage in such efforts.[3] See 42 U.S.C. § 2000e-5(b).
In attempting to conciliate the matter, the EEOC proposed certain remedial measures concerning Propak’s facilities in North Carolina and South Carolina. These measures would have required Pro-pak in these locations to offer certain employment opportunities, to provide training for supervisors and managers, and to post certain notices. By this time, however, Propak had closed all its facilities in those *149 states, thereby rendering it impossible for Propak to implement such remedial measures.[4] Propak advised the EEOC of this fact about one month later.
The EEOC nevertheless initiated a lawsuit in the district court against Propak in August 2009, more than six and one-half years after Quintois filed his discrimination charge. The EEOC alleged in its complaint that between October 2002 and June 2004, Propak violated Title VII by refusing to hire, on the basis of national origin, a class of non-Hispanic individuals at the Shelby, North Carolina facility. The EEOC sought certain injunctive relief, including an order requiring that Propak institute policies and programs to benefit non-Hispanic persons in order to mitigate the effects of the allegedly unlawful employment practices. The EEOC also sought monetary relief on behalf of the affected class of non-Hispanic employment applicants.
Propak filed a motion to dismiss arguing, among other things, that the action should be barred under the doctrine of laches.[5] The district court denied the motion without prejudice with respect to Pro-pak’s laches defense, and ordered the parties to engage in discovery limited to the issue whether Propak had suffered prejudice resulting from the EEOC’s extensive delay in initiating the litigation.
At the conclusion of this discovery period, Propak filed a motion for summary judgment, again asserting the defense of laches. The district court granted Pro-pak’s motion, concluding that the EEOC’s delay in initiating the lawsuit was “unreasonable.” In reaching this conclusion, the court emphasized the fact that during the investigation, “there were significant periods when the EEOC took little or no action toward completing the investigation.”
The district court held that Propak suffered prejudice resulting from the EEOC’s “unreasonable delay.” The court observed that certain important witnesses, including the site managers for the Shelby facility during the relevant time period, were no longer employed by Propak and that “locating them would be difficult, if not impossible.” The court also stated that even if such witnesses ultimately could be located, they likely would have “faded memories” of the time period at issue, which was more than five years before the complaint was filed.
The court noted that the EEOC’s delay caused Propak additional prejudice, because Propak routinely had destroyed personnel records three years after an individual no longer was employed by the company. Thus, Propak destroyed the records of employees who left the company between 2002 and 2004 before being notified in September 2008 that the EEOC was pursuing the matter on a class basis.[6] The court specifically rejected the EEOC’s argument that it had notified Propak of the class designation at an earlier date, observing that the record did not support the EEOC’s assertion. Although the court *150 also noted the EEOC’s failure to identify purported victims and the unavailability of injunctive relief, the court primarily emphasized Propak’s inability to produce key witnesses and the destruction of documents essential to Propak’s defense.
After the district court entered its judgment in favor of Propak, the EEOC timely filed a notice of appeal. The EEOC later sought dismissal of the appeal, which this Court ordered upon the agreed motion of the parties.
The district court later considered Pro-pak’s motion seeking attorneys’ fees in the amount of $192,602.95, which were incurred by Propak after the EEOC filed the complaint. The district court granted the motion, and awarded Propak nearly the full amount requested. Relying on the Supreme Court’s holding in Christians-burg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the district court concluded that an award of attorneys’ fees was appropriate because the EEOC knew or should have known that its claim “was frivolous, unreasonable, or groundless.” Id. at 422, 98 S.Ct. 694.
The district court held that the EEOC acted “unreasonably” in filing the complaint, and alternatively held that the EEOC acted “unreasonably” in continuing the litigation in view of the developing record. The court stated that the EEOC had acted unreasonably in filing the complaint because “by the time the EEOC determined to bring this action it was abundantly clear that a lawsuit would be moot and thus it was unreasonable to have filed it.” The court held that injunctive relief was not available because Propak had closed the Shelby plant and its other North Carolina facilities, and that an award of monetary damages was unlikely because the EEOC knew before filing the complaint that it could not identify the class of alleged victims.
With respect to the EEOC’s continued pursuit of the litigation following discovery, the district court alternatively held that such pursuit was unreasonable because “it was again reaffirmed [during discovery] that purported victims and witnesses could not be located [and] the facilities were closed.” The court further concluded that the EEOC unreasonably continued to pursue the litigation after learning that the relevant employment records “were no longer in existence.”
Addressing the amount of attorneys’ fees, the district court analyzed Propak’s request in detail, despite the EEOC’s failure to contest the amount sought, and ultimately awarded Propak $189,113.50.[7] The EEOC filed a timely appeal challenging this award.
II.
The EEOC asks us to hold that federal courts are not permitted to apply the equitable defense of laches in a lawsuit brought by an agency of the federal government. Conceding that it failed to raise this argument in the district court, the EEOC nevertheless maintains that it would be “unjust” to permit an award of attorneys’ fees incurred in asserting a laches defense. Alternatively, the EEOC asserts that the district court impermissibly relied on its earlier laches determination in awarding attorneys’ fees, and that the court made *151 erroneous factual findings in deciding its fee award. We disagree with the EEOC’s arguments.
A.
As a general matter, a litigant must pay its own attorneys’ fees in the absence of a statutory or enforceable contractual provision allowing attorneys’ fees to be awarded to a prevailing party. See Christiansburg, 434 U.S. at 415, 98 S.Ct. 694. Title VII provides such a statutory fee-shifting mechanism, which gives district courts the discretion to award reasonable attorneys’ fees to a prevailing party. Id. at 416, 98 S.Ct. 694. This feeshifting provision states:
In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney’s fee (including expert fees) as part of the costs, and the [EEOC] and the United States shall be hable for costs the same as a private person.
42 U.S.C. § 2000e-5 (k).
Although Section 2000e-5(k) does not place different burdens on plaintiffs and defendants seeking an award of attorneys’ fees, the Supreme Court explained in Christiansburg that a heightened standard applies to a prevailing defendant seeking such an award in a Title VII action. 434 U.S. at 417-22, 98 S.Ct. 694. In contrast to a prevailing private plaintiff, who generally will be awarded attorneys’ fees under this provision, a prevailing defendant is eligible to receive such an award only when the court finds that the plaintiffs action was “frivolous, unreasonable, or without foundation.”[8] Id. at 421, 98 S.Ct. 694. However, a finding of bad faith is not required for a prevailing defendant to be awarded attorneys’ fees. Id.
A district court must avoid engaging in “post hoc reasoning” in considering whether a plaintiffs action under Title VII was unreasonable, and an award will not stand if based only on the plaintiffs failure to prevail. Id. at 421-22, 98 S.Ct. 694. An award of attorneys’ fees to a prevailing defendant is a “conservative tool, to be used sparingly” in cases in which the plaintiff initiated or continued to litigate a claim that the plaintiff “knew or should have known was groundless, frivolous, or unreasonable.” EEOC v. Great Steaks, Inc., 667 F.3d 510, 517 (4th Cir. 2012) (citations and internal quotation marks omitted).
There is neither a precise test to be used, nor a specific quantum of proof required, in determining whether a plaintiffs claim was unreasonable. Id. (citing Arnold v. Burger King Corp., 719 F.2d 63, 65 (4th Cir.1983)). Instead, a decision whether attorneys’ fees should be awarded to a prevailing defendant under the Christians-burg standard “is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action.” Id. (quoting Arnold, 719 F.2d at 65).
We review for an abuse of discretion the district court’s decision to award attorneys’ fees to Propak under Section 2000e-5(k). See id. at 516. In light of the principles discussed above, we accord great deference to the district court’s conclusion that the EEOC’s actions were unreasonable. See id. at 517. Additionally, we review the district court’s factual findings in support of the fee award for *152 clear error. See Williams v. Metro. Life Ins. Co., 609 F.3d 622, 634 (4th Cir.2010); Daly v. Hill, 790 F.2d 1071,1079 n. 10 (4th Cir.1986).
B.
As an initial matter, we reject the EEOC’s request that we consider the issue whether laches is available as an affirmative defense to an action filed by an agency of the United States. Although the issue was relevant to the district court’s summary judgment holding, the EEOC abandoned its appeal of the summary judgment order. Accordingly, we do not consider the rationale for the court’s laches determination, or the EEOC’s arguments relating to that decision, in the present appeal.
We turn to consider the EEOC’s argument that the district court improperly based its decision awarding attorneys’ fees on the court’s earlier laches ruling. The EEOC asserts that the district court engaged in “hindsight logic” in explaining its award of attorneys’ fees by referencing its earlier laches holding and the prejudicial delay caused by the EEOC. We disagree with the EEOC’s argument.
In awarding attorneys’ fees under the Christiansburg standard upon finding that the EEOC unreasonably initiated the litigation, the district court’s award was not based on the earlier summary judgment decision. Although the court referenced its previous findings of delay and prejudice from the summary judgment holding, and the two decisions set forth many overlapping facts, the two holdings were based on different principles of law.
The summary judgment holding of lach-es was based on the EEOC’s unjustified delay in bringing the lawsuit, and on the resulting prejudice affecting Propak’s ability to defend itself in the action. That decision rested primarily on the unavailability of key witnesses and documents that Propak needed to support its defense.
In contrast, the district court awarded attorneys’ fees chiefly on the basis that the EEOC’s lawsuit effectively was moot at its inception. In reaching this conclusion, the court emphasized that, when the complaint was filed, the EEOC had failed to identify the class of victims who could be entitled to monetary relief, and injunctive relief was unavailable because Propak had closed its facilities in North Carolina. These findings, which were central to the court’s conclusion that the EEOC unreasonably initiated the lawsuit, were not material to the court’s laches decision articulated on summary judgment. Thus, the court’s fee award reflected proper consideration of the Christiansburg standard by assessing whether the EEOC acted unreasonably in initiating the litigation.[9]
We accord “great deference” to the district court’s conclusion that the EEOC acted unreasonably in initiating the litigation. See Great Steaks, 667 F.3d at 517. The EEOC argues nevertheless that the district court erred in reaching this conclusion, and attacks the court’s factual finding that the EEOC could not identify individu *153 al members of the class of victims eligible for monetary relief.
Under onr clear error standard, however, we will not reverse a district court’s factual finding unless after reviewing the record we are “left with a definite and firm conviction that a mistake has been committed.” Helton v. AT & T Inc., 709 F.3d 343, 350 (4th Cir.2013). The present record contains four entries from the spring of 2006 noting that an “[[Investigator interviewed potential class member,” and four similar notations from early 2009 noting that “[pjotential class member [was] interviewed.” (Emphasis added.) The EEOC asserts that these entries demonstrate that the EEOC identified the class of victims harmed by Propak’s hiring practices during the relevant period. We disagree.
The record lacks any description of the substance of these interviews with “potential” class members, or of any other interviews that may have been conducted to identify the class of purported victims.[10] In particular, the record does not show whether the individuals who were interviewed worked or applied for work in the Shelby, North Carolina facility during the relevant time period, nor does the record indicate whether the individuals interviewed had credible claims of discrimination or desired to be included in the class.
The record also includes a notation that “contact letters [were] mailed to potential class members.” However, the record does not show that any individuals receiving these letters fell within the EEOC’s definition of the target class. Moreover, the fact that the EEOC engaged in efforts to identify “potential claimants” does not establish that the EEOC successfully identified individuals harmed by Propak’s hiring practices during the relevant time period. Indeed, the evidence showing the EEOC’s efforts to identify the class of victims, without any indication that such efforts were successful, implicitly supports the district court’s finding that claimants could not be identified. For these reasons, we do not have a “definite and firm conviction” that the district court mistakenly concluded that the EEOC had failed to identify potential victims in its target class before filing its complaint. See Helton, 709 F.3d at 350.
Next, the EEOC alternatively argues that the district court’s factual finding that the EEOC was unable to identify claimants is an “irrelevant consideration.” Again, we disagree.
We previously have held that an award of attorneys’ fees to a defendant under the Christiansburg standard was justified in part because the plaintiff sought relief that it knew or should have known was unavailable. See Hutcherson v. Bd. of Supervisors, 742 F.2d 142, 146 (4th Cir.1984). Applying that principle here, we conclude that the district court was entitled to consider the lack of remedies available to the EEOC as a result of its inability to identify any potential victims.
We likewise find no merit in the EEOC’s assertion that it was entitled to maintain an action seeking relief against Propak despite the fact that, nine months before' filing the complaint, the EEOC became aware that Propak no longer operated any facilities in North Carolina. Contrary to the EEOC’s contention, the Seventh Circuit’s decision in EEOC v. Konica Minolta Business Solutions U.S.A., Inc., 639 F.3d *154 366 (7th Cir.2011), offers no support to the EEOC here. The decision in Konica solely concerned the issue whether a subpoena sought by the EEOC requested information relevant to its investigation, in view of the fact that one of Konica’s four facilities in the Chicago area had closed. Id. at 367. Moreover, that decision did not sanction the initiation of an enforcement action when a defendant no longer maintained the facilities where the discrimination allegedly occurred.
We therefore conclude that the court did not abuse its discretion in holding that the EEOC acted unreasonably in initiating this litigation. See Christiansburg, 434 U.S. at 421, 98 S.Ct. 694; Great Steaks, 667 F.3d at 517. In view of our conclusion, we need not address the district court’s alternative holding that the EEOC’s continued pursuit of the litigation was unreasonable in light of the developing record in the case. Finally, because the EEOC does not argue on appeal that the district court erred in determining the amount of attorneys’ fees to which Propak is entitled, we decline to address the district court’s well-reasoned fee calculation.
III.
For these reasons, we affirm the district court’s judgment.

AFFIRMED.

. The United States Department of Justice also conducted an investigation of Propak based on Quintois' allegations. That investigation, which lasted about one year, ended in November 2005 without any charges being brought.

. The EEOC’s issuance of a “right to sue” letter allows an individual to initiate a private Title VII lawsuit in federal court. Davis v. N.C. Dep’t of Corr., 48 F.3d 134, 138 (4th Cir.1995).

.Conciliation is one of the EEOC’s "most essential functions” and, under our precedent, the EEOC is required to engage in a “good faith attempt at conciliation” before it may file a complaint in a federal court. EEOC v. Radiator Specialty Co., 610 F.2d 178, 183 (4th Cir. 1979).

. The parties do not argue, and the record does not suggest, that Propak's decision to close its facilities in North Carolina and South Carolina was influenced by the EEOC's investigation.

. The equitable defense of laches requires that a defendant prove "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.” EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 409 (4th Cir.2005) (citation and internal quotation marks omitted).

.The parties dispute on appeal whether Pro-pak acted unlawfully in failing to preserve its records. We need not resolve this issue because it is not material to our analysis of the district court’s decision to award Propak attorneys’ fees.

. The district court declined to award Propak an additional $3,489.45 in attorneys’ fees related to "travel to depositions and research.” Propak does not appeal from this decision. Propak also filed in the court a bill of costs pursuant to 28 U.S.C. § 1920, seeking reimbursement of an additional $1,467.33. The court granted the bill of costs in the amount of $61.20, but denied the bill with respect to the remaining $1,406.13. Neither party appeals from the district court's ruling with respect to the bill of costs.

. The EEOC does not contest on appeal the district court's conclusion that Propak is a prevailing party for purposes of Section 2000e-5 (k).

. Because the district court did not base its decision to award attorneys’ fees on the reasonableness of the EEOC's opposition to the laches defense, we do not consider the EEOC's argument that it reasonably thought it could overcome that defense. Separately, we observe that certain facts in the district court's summary judgment decision concerning the unavailability of witnesses and the loss of documents overlap with facts relating to the court's alternative basis for awarding attorneys’ fees, namely, that the EEOC's continued pursuit of the litigation was unreasonable. However, because we do not reach the court’s alternative holding, we need not address whether that aspect of the court’s decision improperly relied on facts relating to the summary judgment decision.

. We also observe that although the EEOC designated documents relating to various interviews and other efforts to identify class members as being privileged material, the EEOC has not identified any reason preventing it from filing redacted versions of these documents in the record.